**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| EVEREST NATIONAL INSURANCE COMPANY, | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. 4:20-cv-1265 |
| MEGASAND ENTERPRISES, INC., | § § § | |
| Defendant. | § | |

**COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiff EVEREST NATIONAL INSURANCE COMPANY ("Everest") files this Complaint for Declaratory Judgment pursuant to 28 U.S.C. § 2201(a) stating as follows:

### I.     INTRODUCTION

1. This is an insurance coverage action seeking declaratory relief pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202 and Rule 57 of the Federal Rules of Civil Procedure. Everest seeks a determination of the parties' rights and obligations under four successive commercial general liability insurance policies, Policy Nos. C4GL00340-141, CF4GL00340-151, CF4GL00340-161, and CF2GL00007-171 ("the Policies") issued by Everest to Defendant MEGASAND ENTERPRISES, INC. ("Megasand"). True and correct copies of Policy Nos. C4GL00340-141, CF4GL00340-151, CF4GL00340-161, and CF2GL00007-171 are attached as Exhibits A, B, C, and D, respectively.

2. A dispute exists between Everest and Megasand regarding whether Everest is obligated under the terms and conditions of the Policies to defend and indemnify Megasand in connection with two lawsuits consolidated with five subsequently filed lawsuits (the "Underlying

Lawsuits") brought by groups of property owners against Megasand and other defendants for damages caused by flooding during Hurricane Harvey, on or about August 25, 2017. Other property owners filed petitions in intervention in the Underlying Lawsuits against Megasand and the other defendants based on the same claims for damages to their properties. Although the Court struck these petitions interventions, many of the intervening property owners have refiled the same claims in two other lawsuits. The plaintiffs and intervenors in the Underlying Lawsuits, including the refiled intervention claims, are hereinafter collectively referred to as "Claimants."[1]

3.  Everest has been defending Megasand in the Underlying Lawsuits under the Policies subject to a full and complete reservations of rights since July 2019. The defendants in the Underlying Lawsuits, including Megasand, are mining or industrial entities that owned or occupied properties near various waterways in greater Houston. Claimants contend the underlying defendants, including Megasand, engaged in illegal and negligent dumping or discharges of silt, stand, sediment, mud, construction materials, or other products into Spring Creek and the San Jacinto River. They further contend these activities dramatically decreased the overall capacity of these rivers and other bodies of water downstream, including Lake Houston, such that these waterways were unable to hold the rainfall from Hurricane Harvey, which resulted in the flooding of the Claimants' properties on around August 25-28, 2017.

4.  Everest issued the first of the Policies for the policy period of August 21, 2014 to August 21, 2015, which was then renewed for three additional policy periods spanning August 21, 2015 to August 21, 2018. The Policies' relevant Insuring Agreement covers "property damage" caused by an "occurrence," defined to mean an accident, that occurs during the relevant policy period. Here, all of the alleged property damage in the Underlying Lawsuits occurred during or

---

[1]  Likewise, the "Underlying Lawsuits" henceforth refers to the re-filed intervention claims as well.

immediately after Hurricane Harvey made landfall in the Houston area on around August 25-28, 2017, which was after the policy period of the first three Policies expired. Accordingly, Everest has no duty to defend or indemnify Megasand in the Underlying Lawsuits under the first three Policies because there is no potential for coverage under the terms and conditions of the first three Policies.

5. Moreover, the Policies, including the fourth Policy in effect during Hurricane Harvey, include a Pollution Exclusion that excludes coverage for "property damage" arising out of the discharge, dispersal, seepage, migration, release or escape of "pollutants," which is defined to include any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, akalis, chemicals and waste. Here, Megasand was sued in the Underlying Lawsuits for property damage allegedly arising out of Megasand's illegal and negligent dumping or discharges of silt, sand, sediment, mud, construction materials or other products into waterways. Because any such alleged dumping or discharging of these materials are expressly excluded by the Policies' Pollution Exclusion, Everest has no duty to defend or indemnify Megasand in the Underlying Lawsuits as there is no potential for coverage for "property damage" at issue.

## II.     THE PARTIES

6. Plaintiff Everest is, and at all times relevant hereto was, an insurance company organized and existing under the law of Delaware, with its principal place of business in Liberty Corner, New Jersey.

7. Defendant Megasand is, and at all times relevant hereto was, a corporation organized and existing under the laws of the State of Texas with its principal place of business located at 5210 West Road, Baytown, Texas 77521. Defendant Megasand can be served with process through its registered agent, Greg Angel, at 5210 West Road, Baytown, Texas 77521.

## III. JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states of the United States. Specifically, with respect to the amount in controversy, this matter involves liability insurance coverage for an Underlying Lawsuits wherein the Claimants assert claims for economic damages in excess of $1,000,000.00.

9. The Court has general personal jurisdiction over Megasand because it is considered to be a citizen of the State of Texas in which it is incorporated and in which its principal place of business is located.

10. An actual controversy exists between Everest and Megasand, and therefore, this Court may declare the rights and other legal relations of the parties pursuant to 28 U.S.C. § 2201(a).

11. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this district.

## IV. FACTUAL BACKGROUND

**A.  The Everest Policies**

12. In August 2014, Everest issued the first of four successive Commercial General Liability Insurance policies to Megasand.[2] The first policy, Policy No. C4GL00340-141, was effective August 21, 2014 to August 21, 2015. *See* Ex. A. The second policy, Policy No. CF4GL00340-151, was effective August 21, 2015 to August 21, 2016. *See* Ex. B. The third policy, Policy No. CF4GL00340-161, was effective August 21, 2016 to August 21, 2017. *See* Ex. C. The fourth policy, Policy No. CF2GL00007-171, was effective August 21, 2017 to August 21, 2018. *See* Ex. D. Each Policy includes a $1,000,000 "Each Occurrence" limit, a $2,000,000 "Aggregate

---

[2] Everest has insured Megasand under prior policies since 2001. However, the Policies identified in this Complaint are the only relevant policies, as will become clear, *infra*.

Limit" for each policy period. *See* Exhibits A, B, C, and D at Declarations and at Section III.

13. The Policies each require that in order for there to be coverage under the Policies (among other things), "property damage" must occur during the relevant policy period. Additionally, the Policies exclude "property damage" arising from the actual or alleged discharge of "pollutants" from the scope of coverage. *See* Exhibits A, B and C at § I.1. and the Total Pollution Exclusion With a Hostile Fire Exception Endorsement. *Also see* Exhibit D at § I.1. and 2.f.

14. Specifically, the Policies include the following relevant Insuring Agreement, Pollution Exclusion, and definitions:

**COMMERCIAL GENERAL LIABITY COVERAGE FORM**

**SECTION I – COVERAGES**

**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement**

   **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

   **(1)** The amount we will pay for damages is limited as described in Section **III** – Limits of Insurance; and

   **(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

   No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

   **b.** This insurance applies to "bodily injury" and "property damage" only if:

  **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

  **(2)** The "bodily injury" or "property damage" occurs during the policy period; and

  **(3)** Prior to the policy period, no insured listed under Paragraph **1.** Of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

  \* \* \*

**2. Exclusions**

This insurance does not apply to:

**a. Expected or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured . . .

\* \* \*

**f. Pollution**

  **(1)** "Bodily injury" or "property damage" arising out of the actual, alleged, or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

  **(a)** At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

   **(i)** "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building or equipment that is used to heat water for personal use, by the building's occupants or their guests;

   **(ii)** "Bodily injury" or "property damage" for which you may be

       held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

      **(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

  **(b)** At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

  **(c)** Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

      **(i)** Any insured; or

      **(ii)** Any person or organization for whom you may be legally responsible . . .

* * *

**SECTION V – DEFINITIONS**

* * *

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

* * *

**15.** "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

* * *

**17.** "Property damage" means:

  **a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    b.  Loss of use of tangible property that is not physically injury. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

15.    The first three Policies also include a Total Pollution Exclusion With a Hostile Fire Exception Endorsement that modifies the Pollution Exclusion for those Policies and provides:

> Exclusion **f.** under Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:
>
> This insurance does not apply to:
>
> **f. Pollution**
>
> **(1)** "Bodily injury" or "property damage" which would not have occurred in whole or in part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants.
>
> This exclusion does not apply to "bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire" unless that "hostile fire" occurred or originated:
>
> **(a)** At any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste; or
>
> **(b)** At any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations to test for, monitor, clean up, remove, contain, treat, detoxify, neutralize or in any way respond to, or assess the effects of, "pollutants".
>
> **(2)** Any loss, cost or expense arising out of any:
>
> **(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or
>
> **(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

16.    Finally, all of the Policies include a Pollution Changes Endorsement that provides:

> Any exclusion, limitation or provision relating to pollutants ("pollutants"), or any amendment to or replacement of such exclusions, limitations or other provisions, applies whether or not the pollutant has any function in, or is of essential, integral, necessary or significant use to, your business, operations, premises, site or location.

**B.    The Underlying Lawsuits**

17.    On September 21, 2018, a group of property owners filed suit against Megasand and various other entities under Cause No. 2018-66557 in the 11th District Court of Harris County, Texas (the "*Ellisor* suit"). A second group of property owners filed suit on April 18, 2019 against Megasand and others under Cause No. 2019-27513 in the 215th District Court of Harris County, Texas (the "*Auzenne* suit"). On or about August 24, 2019, the *Ellisor* suit and the *Auzenne* suit were consolidated with five other lawsuits filed in Harris County[3] into the Underlying Lawsuits. On August 23 and 25, 2019, two other groups of property owners filed petitions in intervention into the Underlying Lawsuits (the "*Ruggles* intervenors" and "*Waterbury* intervenors," respectively).[4] However, some of the *Waterbury* intervenors later non-suited their claims,[5] and the court subsequently struck and dismissed without prejudice both petitions in intervention in their entirety on December 16, 2019. The *Ruggles* intervenors then re-filed their lawsuit, on February 7, 2020, alleging the same claims against Megasand and the other defendants in Cause No. 2020-08901 in the 129th District Court of Harris County, Texas (the "*Del Pino* suit").[6] Additionally, most of the *Waterbury* intervenors refiled their lawsuit, on February 13, 2020, alleging the same

---

[3]    The five other lawsuits are: (1) *Kings Cove Apartments, LLC v. Hanson Aggregates, LLC,, et al.*, Cause No. 2019-49318; (2) *Brian K. Amburn, et al. v. Hanson Aggregates, LLC, et al.*, Cause No. 2019-49335; (3) *Jose Alba, Jr., et al. v. Hanson Aggregates, LLC, et al*, Cause No. 2019-49263; (4) *Tony Wang, et al. v. Hanson Aggregates, LLC, et al.*, Cause No. 2019-49368; (5) *Larry Zaludek, et al. v. Hanson Aggregates, LLC, et al*, Cause No. 2019-49382.

[4]    Both petitions in intervention were filed on behalf of hundreds of property owners. For the sake of brevity, each petition in intervention is referred to by the last name of the first named intervenor in the petitions in intervention.

[5]    *See* "Intervenors' Notice of Voluntary Non-Suit Without Prejudice", filed in the Underlying Lawsuits on December 13, 2019.

[6]    Eduardo and Spring Del Pino were also named intervenors in the original *Ruggles* petition in intervention. However, the *Ruggles* intervenors' counsel named them as the first named Plaintiff in the *Del Pino* suit.

claims against Megasand and the other defendants in Cause No. 2020-10361, in the 270th District Court of Harris County, Texas (the "*Nelson*" suit).[7] All of these lawsuits are hereinafter sometimes collectively referred to as "the Underlying Lawsuits."

18. Although the pleadings in the Underlying Lawsuits have been amended many times, the Operative Pleadings[8] contain the same factual allegations and causes of action. The Operative Pleadings generally allege that Megasand and the other defendants negligently discharged silt, sand, sediment and construction materials into Spring Creek and into the San Jacinto River, which reduced the capacity of these and other waterways, including Lake Houston, to retain water. The Operative Pleadings further allege that the reduced capacity of the waterways prevented them from retaining rainfall during Hurricane Harvey, which resulted in the flooding of Claimants' properties.

19. The Operative Pleadings allege, in pertinent part, as follows:

> "Many defendants … own and/or operate mining facilities within two miles of the East Fork of the San Jacinto River, the West Fork of the San Jacinto River, Spring Creek, and/or Lake Houston. Other defendants own or have owned properties and/or commercial properties and/or facilities and/or developments immediately adjacent to and/or in close proximity to these waterways. Many defendants have been cited by the [TCEQ] for numerous issues, including excessive discharge which contained runoff dust, sand, construction materials, and other products produced and/or used by Defendants at locations and/or facilities and/or properties adjacent to [the above waterways] . . .
>
> On many occasions, water from sand pits, construction sites, batch plants, commercial properties and/or other facilities was being discharged into or near parts of [the rivers]. On other occasions, mud was pumped directly into the San Jacinto River. Some defendants were cited because they were operating above their allowed permit limits. Other defendants were operating without any permits at all.

---

[7] Steven Nelson was also a named intervenor in the original *Waterbury* petition in intervention. However, the *Waterbury* intervenors' counsel named him as the first named Plaintiff in the *Steven Nelson* suit.

[8] The "Operative Pleadings" mean: Plaintiffs' Eleventh Amended Petition filed in the Underlying Lawsuits on November 8, 2019, the Original Petition filed in the *Del Pino* suit on February 7, 2020, and the Original Petition filed in the *Steven Nelson* suit on February 13, 2020.

> The defendants that own and/or operate mining facilities, construction sites, batch plants, commercial properties and/or other facilities have done so immediately adjacent to the various waterways and in the flood plain. In particular, mining facilities by clear cutting all the vegetation, and digging pits within feet of the river banks. The defendants that own and/or operate mining facilities, construction sites, batch plants, commercial properties and/or other facilities create no real barriers between their mines and the rivers, and often breaches occur where the pits open up and empty into the river (sometimes for years without repair). These defendants have no plans in place for protection and preservation of the pits and loose sand during a flood event, and floods have occurred on numerous occasions. During Harvey, the mines (old and active), construction sites, batch plants, commercial properties and/or other facilities along the [rivers], were inundated and overcome with flood waters, and thousands of acres of sand washed downstream, clogging the rivers and lakes, resulting in flood waters moving outside the banks and outside the flood plain, causing hundreds of millions of dollars in damages.
>
> Altogether, with silt, dirt, rock, and sand being discharged and/or washed into the bodies of water surrounding Defendants' properties and/or facilities and/or job sites and/or developments, the San Jacinto River Basin and Lake Houston continued to lose capacity."[9]

20. The Operative Pleadings assert counts of negligence and negligence *per se*, violations of the Texas Water Code, and nuisance based on negligent conduct against Megasand and the other defendants.[10] According to the Operative Pleadings, Claimants seek damages in excess of $1 million related to the flood damage to their properties, as well as mental anguish, pre and post judgment interest, court costs and exemplary damages due to grossly negligent conduct.[11]

C. **Megasand's Request for a Defense**

21. Megasand tendered the defense of the *Ellisor* suit to its insurer, Everest. On January 7, 2019, Everest, through its third-party administrator, Sedgwick, agreed to defend Megasand from

---

[9] *See* Plaintiffs' Eleventh Amended Petition in the Underlying Suit at ¶¶ 561-564; *see* Plaintiff's Original Petition in the *Del Pino* Suit at ¶¶ 613-616; and *see* Plaintiff's Original Petition in the *Steven Nelson* Suit at ¶¶ 507-510.

[10] *See* Plaintiffs' Eleventh Amended Petition in the Underlying Suit at ¶¶ 565-581; *see* Plaintiff's Original Petition in the *Del Pino* Suit at ¶¶ 617-633; and *see* Plaintiff's Original Petition in the *Steven Nelson* Suit at ¶¶

[11] *See id.*

the *Ellisor* suit subject to a full reservation of rights. Megasand later tendered the defense of the *Auzenne* suit to Everest. On July 17, 2019, Everest, through Sedgwick, also agreed to defend the *Auzenne* suit subject to a full reservation of rights. Everest has been providing a defense to Megasand in the Underlying Lawsuits subject to a full reservation of rights ever since.

## V.   CAUSES OF ACTION

A.   **Count I – Declaratory Judgment: There is no coverage for the Underlying Lawsuits under the first three Policies because the "property damage" at issue in the Underlying Lawsuits did not occur during the policy periods for those Policies.**

22.   Everest repeats and re-alleges each and every allegation found within Paragraphs 1 through 21 above, as though fully set forth herein.

23.   In order for there to be coverage for liability arising from "property damage" under the relevant Insuring Agreement of the Policies, the "property damage" must occur during the relevant policy period.

24.   In this case, the first three Policies cover "property damage" that occurred from August 21, 2014 to August 21, 2017. However, the Claimants in the Underlying Lawsuits only assert claims for damages to their properties that occurred after the first three policy periods expired, during Hurricane Harvey, which occurred on or after August 25, 2019.

25.   Thus, pursuant to subsection I.A.1.b.(2) of the Insuring Agreement, the only Policy that could possibly provide coverage from the Underlying Lawsuits is the fourth Policy, covering the period of August 21, 2017 through August 21, 2018, that coincided with Hurricane Harvey.

26.   Accordingly, Megasand is not entitled to coverage under the first three Policies and thus Everest owes no duty to defend or indemnify Megasand from the Underlying Lawsuits under the first three Policies, Policy Nos. C4GL00340-141, CF4GL00340-151 and CF4GL00340-161.

B.   **Count II – Declaratory Judgment: The Pollution Exclusion bars coverage for the Underlying Lawsuits under the Policies, because the alleged property damage arises from the alleged discharge of "pollutants" as defined under the Policies.**

27.   Everest repeats and re-alleges each and every allegation found within Paragraphs 1 through 26 above, as though fully set forth herein.

28.   To the extent that the Underlying Lawsuits seek "property damage" that occurred during the fourth policy period, and to the extent such "property damage" resulted from an "occurrence" and was not "expected or intended from the standpoint of the insured," such "property damage" is excluded by the fourth Policy's Pollution Exclusion. Specifically, the fourth Policy's Pollution Exclusion precludes coverage for "property damage" arising out of the "discharge, dispersal, seepage, migration, release or escape of 'pollutants,'" including "[a]t or from any premises, site or location which is or was at any time owned or occupied by … any insured."

29.   Further, even if the Underlying Lawsuits seek "property damages" that occurred during the first three policy periods (which Everest denies), the first three Policies include a Total Pollution Exclusion With a Hostile Fire Exception Endorsement that similarly excludes coverage for "property damage" which would not have occurred in whole or in part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants."[12]

30.   Next, all of the Policies define "pollutants" to mean "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals."

31.   In addition, all of the Policies include a Pollution Changes Endorsement, which states in relevant part that "[a]ny exclusion … relating to pollutants … applies whether or not the pollutant has any function in, or is of essential, integral, necessary or significant use to,

---

[12]   The Total Pollution Exclusion With a Hostile Fire Exception Endorsement includes an exception for "property damage" arising out of "hostile fire" at certain locations. Because the "property damages" in the Underlying Lawsuits do not arise from a "hostile fire" the exception to the exclusion is inapplicable.

[Megasand's] business, operations, premises, site or location."

32. Here, the Operative Pleadings in the Underlying Lawsuits allege that Megasand negligently and illegally discharged sediment, silt, sand and dirt into waterways, which caused the waterways to be unable to retain rainfall during Hurricane Harvey, resulting in flooding to their properties. The sand, sediment and other materials that were allegedly discharged by Megasand fall within the definition of "pollutants" because they are solid or liquid irritants or contaminants that were allegedly discharged or dispersed where they do not belong, in the waterways.

33. Accordingly, the Pollution Exclusions of the Policies apply to preclude coverage for the claims against Megasand in the Underlying Lawsuits, and thus Everest owes no duty to defend or indemnify Megasand in relation to same.

## PRAYER FOR RELIEF

34. WHEREFORE, Plaintiff EVEREST NATIONAL INSURANCE COMPANY prays that this Court enter a declaration and judgment in its favor finding that:

(a) Plaintiff EVEREST NATIONAL INSURANCE COMPANY has no duty to defend Defendant MEGASAND ENTERPRISES, INC. against the claims asserted in the Underlying Lawsuits because there is no potential for insurance coverage under the terms and conditions of the Policies; and

(b) Plaintiff EVEREST NATIONAL INSURANCE COMPANY has no duty to indemnify Defendant MEGASAND ENTERPRISES, INC. against the claims asserted in the Underlying Lawsuits because there is no potential for insurance coverage under the terms and conditions of the Policies.

Everest prays for such additional declaratory and other relief as this Court deems just and proper.

Respectfully submitted,

**WALKER WILCOX MATOUSEK LLP**

By: ___*/s/ Stephen O. Venable*___
     Stephen O. Venable
     State Bar of Texas No. 24056471
     S.D. Texas Bar No. 777416
     Avniel J. Adler

        State Bar of Texas No. 24071933
        S.D. Texas Bar No. 2229550
        1001 McKinney Street, Suite 2000
        Houston, Texas 77002
        Telephone: (713) 654-8001
        Fax: (713) 343-6571
        Email: svenable@walkerwilcox.com
        Email: aadler@walkerwilcox.com

**ATTORNEY FOR PLAINTIFF EVEREST NATIONAL INSURANCE COMPANY**