United States District Court
Southern District of Texas
**ENTERED**
August 05, 2022
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **EVEREST NATIONAL INSURANCE COMPANY,** | § § § § § | |
| Plaintiff, | § | |
| v. | § § | CIVIL ACTION NO. 4:20-CV-1265 |
| **MEGASAND ENTERPRISES, INC.,** | § § § | |
| Defendant. | § § § | |

## MEMORANDUM AND RECOMMENDATION

This is an insurance coverage action brought by an insurance company against the insured regarding coverage in three consolidated underlying lawsuits ("Underlying Lawsuits"). Pending before the Court[1] is Plaintiff's Motion for Summary Judgment. (Dkt. No. 21.) Plaintiff argues that the Pollution Exclusion clause in the relevant insurance policy relieves them from their duty to defend the Underlying Lawsuits. (Dkt. No. 21; Dkt. No. 28.) In response, Defendant argues the allegations set forth in the Underlying Lawsuits fall outside of the Pollution Exclusion, and thus Plaintiff has a duty to defend. (Dkt. No. 25.) The Court agrees with Defendant. Based on a thorough review of the motions, arguments, and relevant law, the Court **RECOMMENDS** the Motion for Final Summary Judgment be **DENIED**.

**I.   BACKGROUND**

Everest National Insurance Company ("Plaintiff") filed this action on April 9, 2020, seeking a declaratory judgment against Defendant Megasand Enterprises, Inc. ("Defendant").

---

[1] This case was referred to the Undersigned Magistrate Judge pursuant to 28 U.S.C. §636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure ("Rule") 72. (*See* Dkt. No. 33.)

(Dkt. No. 21 at 7.) Plaintiff seeks a declaratory judgment to dispel its duty to defend Defendant from the three consolidated Underlying Lawsuits brought by third party claimants ("Claimants") based on damages incurred during Hurricane Harvey. (*Id.*) The Underlying Lawsuits are individually called (1) the "Ellisor suit," (2) the "Nelson suit," and (3) the "Del Pino suit." (*Id.* at 13–14.) Each Underlying Lawsuit includes substantially similar allegations. (*Id.* at 14.) The Underlying Lawsuits generally allege that Defendant "negligently discharged silt, sand, sediment and construction materials into Spring Creek and into the San Jacinto River, which reduced the capacity of these and other waterways, including Lake Houston, to retain water." (*Id.*) Each Underlying Lawsuit also alleges that this inability to retain water caused the waterways to flood onto the Claimants' properties during Hurricane Harvey. (*Id.*)

After the initial complaints were filed, Claimants in the Ellisor and Nelson suits each filed an amended complaint in which they changed the language regarding what caused the alleged damages from "runoff dust, sand, construction materials, and other products produced and/or used by Defendants" to "materials and substances produced and/or used and/or maintained by some Defendants." (*Id.* at 16–17.) The Claimants in the Del Pino suit did not amend their complaint. (*Id.* at 16.) The Underlying Lawsuits set forth several causes of action including "negligence and negligence per se, violations of the Texas Water Code, nuisance based on negligent conduct, and gross negligence." (*Id.* at 17.)

Relevant to the Motion before the Court, Plaintiff issued four commercial general liability insurance policies to Defendant, a Texas corporation engaged in mining and industrial operations. (Dkt. No. 1 at 2; Dkt. No. 21 at 10.) The parties agree that the fourth policy, which covered the period from August 21, 2017–August 21, 2018 is the only policy relevant to this Motion. (Dkt. No. 21 at 2; Dkt. No. 25 at 3.) The Court agrees that the fourth policy is relevant in this action.

Each policy included a "$1,000,000 'Each Occurrence' limit, [and] a $2,000,000 'Aggregate Limit.'" (*Id.*) The alleged property damage occurred "shortly after Hurricane Harvey 'made landfall on Friday, August 25, 2017.'" (*Id.* at 21.) Defendant concedes that the allegations in the Underlying Lawsuits, if true, would fall under the period of the fourth policy. (Dkt. No. 25 at 6.)

The relevant policy includes a Pollution Exclusion clause that excluded bodily injury or property damage arising from pollutants. (Dkt. No. 21 at 11.) The policy defines pollutants as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste." (Dkt. No. 25 at 7.) Also, per the policy, "waste" is defined as "materials to be recycled, reconditioned, or reclaimed." (*Id.*) On October 26, 2021, Plaintiff filed a Motion for Summary Judgment arguing that the Pollution Exclusion clause relieves them from their duty to defend and indemnify Defendant.

## II. LEGAL STANDARDS

### A. Summary Judgment

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine dispute as to a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "The party moving for summary judgment has the initial burden of demonstrating the absence of a material fact issue . . . [and] if the movant meets this initial burden, the burden shifts to the nonmovant to demonstrate with 'significant probative evidence' that there is an issue of material fact so as to warrant a trial." *Clarendon Am. Ins. Co. v. Bay, Inc.*, 10 F. Supp. 2d 736, 740 (S.D. Tex. 1998). However, the "facts are to be reviewed with all inferences drawn in favor of the party opposing the motion." *Id.* at 739—40. "Summary judgment may not be thwarted by

conclusional allegations, unsupported assertions, or presentation of only a scintilla of evidence." *Rogers v. Bromac Title Servs., L.L.C.*, 755 F.3d 347, 350 (5th Cir. 2014).

### B. Jurisdiction and Venue

Diversity jurisdiction exists when the action is between citizens of different states and involves an amount in controversy over $75,000, excluding interest and costs. 28 U.S.C. § 1332. Here, the parties do not dispute that Plaintiff is an insurance company organized and existing under the laws of Delaware, with its principal place of business in New Jersey, and that Defendant is a corporation organized and existing under the laws of Texas, with its principal place of business in Texas. (Dkt. No 1 at 3–4; Dkt. No. 8 at 2.) It is also not contested that this matter concerns an actual controversy involving liability insurance coverage for the Underlying Lawsuits wherein the Claimants assert claims for economic damages in excess of $1,000,000.00. (Dkt. No. 1 at 4; Dkt. No. 8 at 2.) Therefore, diversity jurisdiction exists, and this matter can be heard in federal court.

General personal jurisdiction allows a court to "hear any claim against that defendant." *Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty.*, 137 S. Ct. 1773, 1780 (2017). A court may exercise general jurisdiction over a corporation if it is one "in which the corporation is fairly regarded as at home." *Id.* Here, the parties agree that this "Court has general personal jurisdiction over Defendant because it is considered to be a citizen of the State of Texas in which it is incorporated and in which its principal place of business is located." (Dkt. No. 1 at 4; Dkt. No. 8 at 2.)

Venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." 28 U.S.C. § 1391(b)(2). Here, the parties also do not dispute that venue is proper in

this district since a substantial part of the events or omissions giving rise to the claim occurred in this district. (Dkt. No. 1 at 4; Dkt. No. 8 at 2.) Thus, this matter is properly before this Court.

### III. ANALYSIS

#### A. Scope of Evidence

Plaintiff filed an Opposed Motion for Leave to File Supplemental Brief in Light of Recent Authority from the Texas Supreme Court[2] and a Supplemental Brief in Support in Light of Recent Authority from the Texas Supreme Court to support the Motion for Summary Judgment ("Supplemental Brief"). (Dkt. No. 31; Dkt. No. 32.) The Texas Supreme Court case cited in the Supplemental Brief modified an exception to the eight-corners rule. *Monroe Guar. Ins. Co. v. BITCO Gen. Ins. Corp.*, 640 S.W. 3d 195, 202 (Tex. 2022) ("*Monroe*"). The Court holds that the exception outlined in *Monroe* is not applicable to the facts at issue in this case.

The eight-corners rule "directs [] courts to determine an insurer's duty to defend its insured based on (1) the pleadings against the insured and (2) the terms of the insurance policy." *Id.* at 199. The recent Supreme Court of Texas case modified the exception to the eight-corners rule by allowing extrinsic evidence to be considered if there is a gap in the plaintiff's pleading and the extrinsic evidence "(1) goes solely to an issue of coverage and does not overlap with the merits of liability, (2) does not contradict facts alleged in the pleading, and (3) conclusively establishes the coverage fact to be proved." *Id.* at 202.

The newly refined exception to the eight-corners rule set out in *Monroe* makes clear that extrinsic evidence can be considered if the underlying pleading is "silent on a coverage-determinative fact" that requires evidence to fill the "informational gap." *Id.* at 200. An example

---

[2]The Court **GRANTS** the Plaintiff's Opposed Motion for Leave to File Supplemental Brief in Light of Recent Authority from the Texas Supreme Court. (Dkt. No. 31.)

of the application of this new rule is illustrated in *Drawbridge Energy US Ventures v. Fed. Ins. Co.* where an insurance company added a "Pending or Prior Proceedings Exclusion" to prohibit coverage for claims prior to the coverage period. 2022 WL 991989, *3 (S.D. Tex. Apr. 1, 2022). The insurance company denied coverage for the underlying lawsuit on the grounds that it was a related claim made 20 days before the policy period. *Id.* at *2–3. The basis of the insurance company's argument that there was no duty to defend related to a letter sent before the policy coverage period commenced, which placed the claim outside of the relevant period. *Id.* at *4. Relevant here, the court held that the letter fell within the *Monroe* exception to the eight-corners rule because the "underlying pleadings are not determinative of whether the coverage exists, because they do not 'contain the facts necessary to resolve the question of whether the claim is covered.'" *Id.* (citing *Monroe*, 640 S.W. 3d at 202).

Here, the *Monroe* exception is not applicable. Unlike *Drawbridge Energy US Ventures, LLC*, the initial pleadings in the Ellisor and Nelson suits, which Plaintiff argues should be admitted, are not necessary to resolve the question of whether the claim is covered since it is clear what the Claimants in the Underlying Lawsuits allege entered the waterways. Although two of the Underlying Lawsuits use the term "materials and substances" rather than "silt, sand, sediment and construction materials," it is still clear what materials and substances each alleges entered the waterways. Therefore, the claim is not silent. The *Monroe* exception does not apply, and the initial pleadings in the Ellisor suit and Nelson suit are excluded from evidence.[3]

**B. Pollution Exclusion**

---

[3] The Court **SUSTAINS** Defendant's objections to Exhibit 5, 6, 8, and 9. (Dkt. No. 25 at 2.)

The materials that caused the alleged damage in the Underlying Lawsuits fall outside of the operative insurance policy's Pollution Exclusion. As such, Plaintiff has a duty to defend the allegations in the Underlying Lawsuits. Ordinary rules of interpretation and statutory construction apply in contract law cases, such as those analyzing insurance policy claims. *E. Concrete Materials, Inc. v. ACE Am. Ins. Co.*, 948 F.3d 289, 300 (5th Cir. 2020). When an insurance policy does not define terms used in the policy, the terms are "given their plain, ordinary meaning." *Id.* Additionally, terms in an insurance policy are not ambiguous if the "terms can be given only one reasonable construction, but if it is ambiguous, the court must construe the language in the insured's favor." *Am. Equity Ins. Co. v. Castlemane Farms, Inc.*, 220 F. Supp. 2d 809, 813–14 (S.D. Tex. 2002). Importantly, an "ambiguity does not arise simply because the parties offer conflicting interpretations." *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W. 3d 154, 157 (Tex. 2003).

Here, the insurance policy specifically defines "pollutants" as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned, or reclaimed." (Dkt. No. 25 at 7.) To resolve whether the contract's "Pollution Exclusion" applies in the present case, the Court must decide whether the materials and substances in question constitute "pollutants." Additionally, the Court must decide whether "materials and substances" and "silt, sand, sediment and construction materials" fall within the meaning of the terms used to classify pollution, such as "irritant," "contamination," and "waste." Plaintiff argues that the Pollution Exclusion is unambiguous and that the alleged substances and/or materials that entered the waterways constitute pollutants. (Dkt. No. 21 at 13, 18.) To the contrary, Defendant argues that the Court needs to first determine whether "materials and substances" constitutes pollutants, claiming that it is too vague and too broad to fall squarely within the Pollution Exclusion. (Dkt. No. 25 at 1.)

Since the Court already concluded that the *Monroe* exception does not apply, the Court must only review the most recent petition in the Underlying Lawsuits and the insurance policy to determine whether the Pollution Exclusion is applicable. Thus, the initial petitions in the Ellisor suit and Nelson suit must be disregarded because "an amended pleading completely supersedes prior pleadings, such that the duty to defend rests on the most recent pleading." *Guar. Nat. Ins. Co. v. Vic Mfg. Co.,* 143 F.3d 192, 194 (5th Cir. 1998). Here, the amended pleadings in the Ellisor and Nelson suits refer to "materials and substances" entering the waterways while the Del Pino suit, which has not been amended, uses the phrase "silt, sand, sediment and construction materials" to describe what entered the waterways. The Court must determine if the materials described in each suit constitute pollutants, or more specifically, irritants, contaminants, or waste.[4]

### 1. The Materials at Issue are Not "Irritants"

The word "irritant" is not defined in the insurance policy, thus it must be given "the ordinary, everyday meaning of the word[] to the general public." *See Longhorn Gasket & Supply Co. v. United States Fire Ins. Co.*, 698 F. App'x 774, 779 (5th Cir. 2017). "The plain meaning of 'irritant' is a 'substance that produces a particular effect, not one that generally or probably causes such effects.'" *Nautilus Ins. Co. v. Country Oaks Apartments Ltd.*, 566 F.3d 452, 456 (5th Cir. 2009). The Fifth Circuit also previously held "that it was bound by the ordinary meaning of 'irritant,' which [is defined] as 'an agent by which irritation is produced (a chemical).'" *Id.* (citing

---

[4] The Court holds the "materials and substances" and "silt, sand, sediment and construction materials" are not waste. Plaintiff does not argue that the alleged pollutants are "waste" in their Motion for Summary Judgment nor in their Reply. (*See* Dkt. No. 21; Dkt. No. 28.) Thus, Plaintiff has abandoned the claim that the materials are waste because they failed to respond to Defendant's argument. (Dkt. No. 25 at 11–12.)

*Am. States Ins. Co. v. Nethery,* 79 F.3d 473, 476 (5th Cir. 1996)) (quoting WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY UNABRIDGED 1197 (1981)).

Plaintiff argues that the "materials" that entered the waterways are irritants. (Dkt. No. 28 at 14.) Based on the plain meaning and prior caselaw, the Court disagrees. In *Nautilus Ins. Co.*, workers accidentally blocked a furnace vent, which caused carbon monoxide to enter a residence and harm a fetus while in utero. 566 F.3d at 453. The court determined that carbon monoxide is a "pollutant" under the operative insurance policy. *Id.* at 456. The court reasoned that carbon monoxide was a pollutant because the policy exempted from the exclusion anything that caused "bodily injury sustained within a building 'and caused by ... fumes [or] vapor ... from equipment used to heat the building.'" *Id.* Because the court found that carbon monoxide was clearly a fume that caused bodily injury, it held that carbon monoxide was a pollutant under the original insurance policy at issue in the case. The court's holding is also consistent with the definitions aforementioned because (1) carbon monoxide is a chemical that (2) caused a particular bodily injury. Based on the plain meaning, and in accordance with the analysis in *Nautilus Ins. Co.*, the alleged "materials and substances" that entered the waterways cannot be considered "irritants" since neither party alleges that the substances cause particularized irritation, nor does either party argue that any of the substances produced a particular bodily injury.

Further, Plaintiff does not cite to a case in which "materials and substances" or "silt, sand, sediment and construction materials" have been defined as "irritants." Plaintiff cites *Great Am. Ins. Co. v. ACE Am. Ins. Co.*, 325 F. Supp. 3d 719, 727 (N.D. Tex. 2018), *aff'd*, 948 F.3d 289 (5th Cir. 2020), but fails to properly describe the Fifth Circuit's holding that the rock fines at issue in that case were determined to be "contaminants" rather than "irritants." *E. Concrete Materials, Inc. v. ACE Am. Ins. Co.*, 948 F.3d 289, 302 (5th Cir. 2020). In addition, Plaintiff cites *Am. Equity Ins.*

*Co. v. Castlemane Farms, Inc.*, 220 F. Supp. 2d 809 (S.D. Tex. 2002) as a case in which an "irritant" caused property damage rather than bodily injury. (Dkt. No. 28 at 15.) However, in that case the court held that the property damage caused by contents of a salt-water disposal pipeline were "liquid waste" and "contaminants" rather than "irritants." *Am. Equity Ins. Co.*, 220 F. Supp. 2d at 814. As such, none of the cases Plaintiff cites for the proposition that either "materials and substances" or "silt, sand, sediment and construction materials" are "irritants" stands for that proposition. Without caselaw on point, and accounting for the contrary plain meaning of "irritants," the Court cannot hold that the materials at issue are irritants.

The Court holds that the "materials and substances" and "silt, sand, sediment and construction materials" at issue in this case are not irritants.

### 2. The Materials at Issue are Not "Contaminants"

A "contaminant" is "something that contaminates . . . [and to] contaminate is to make impure or corrupt by contact or mixture." *Longhorn Gasket & Supply,* 698 F. App'x at 780 (quoting Contaminant, THE AMERICAN HERITAGE DICTIONARY (2d. College Ed.)). Furthermore, "[c]ontamination connotes a condition of impurity resulting from mixture or contact with a foreign substance . . . [a] state of being contaminated; an impurity; that which contaminates; to make inferior or impure by mixture; an impairment of purity; loss of purity resulting from mixture or contact." *McConnell Constr. Co. v. Ins. Co. of St. Louis,* 428 S.W.2d 659, 661 (Tex. 1968) ("*McConnell*"). Another definition of "contaminant" is "to soil, stain, corrupt, or infect by contact or association . . . to render unfit for use by the introduction of unwholesome or undesirable elements." *Cleere Drilling Co. v. Dominion Expl. & Prod., Inc.*, 351 F.3d 642 (5th Cir. 2003).

Plaintiff concedes that the Underlying Lawsuits do not allege that the materials that entered the waterways rendered the waterways impure. (Dkt. No. 28 at 16.) Since the parties agree the

waterways are not contaminated by "impurity resulting from mixture or contact with a foreign substance," *McConnell,* 428 S.W. 2d at 661, the Court focuses on the alternative definition of "contaminant," defined as "to soil, stain, corrupt, or infect by contact or association . . . to render unfit for use by the introduction of unwholesome or undesirable elements," which is in dispute.

Plaintiff argues that the materials that entered the waterways rendered the waterways unfit for the primary purpose of flood control. (Dkt. No. 28 at 16.) In making this argument, Plaintiff relies upon the argument that "Texas's reservoirs, including both Lake Conroe and Lake Houston, are important for providing water supplies . . . [and] many of the state's major reservoirs were constructed principally for flood control, with water supply as a secondary benefit." (Dkt. No. 21, Ex. 11 at 772 ¶ 323.) However, the Underlying Lawsuits allege that "materials and substances were [also] allowed to enter parts of Lake Houston, Spring Creek, the West Fork of the San Jacinto River, and the East Fork of the San Jacinto River." (Dkt. No 21 at 15.) Thus, the argument that the materials entering the waterways rendered the waterways unfit for their primary use of flood control is incorrect because Plaintiff failed to account for the allegations regarding the waterways that are not reservoirs—the San Jacinto River and Spring Creek have not been classified as reservoirs.

Flood control is not the primary use of either the San Jacinto River or Spring Creek. As such, neither the San Jacinto River nor Spring Creek could have not been rendered unfit for their primary use. Even if the Court accepts Plaintiff's argument that Lake Houston and Lake Conroe were rendered unfit for their primary use of flood control by the alleged discharge of materials set out in the Underlying Lawsuits, Plaintiff still has the duty to defend the whole suit since the San Jacinto River and Spring Creek have not been rendered unfit for their use. *Zurich Am. Ins. Co. v. Nokia, Inc.*, 268 S.W.3d 487, 491 (Tex. 2008) (holding that "[w]here the complaint does not state

facts sufficient to clearly bring the case within or without the coverage, the general rule is that the insurer is obligated to defend if there is, potentially, a case under the complaint within the coverage of the policy.").

Furthermore, Plaintiff mistakenly relies upon *E. Concrete Materials, Inc.* where the court found that rock fines that were discharged into a creek were "contaminants." 948 F.3d at 301. A significant portion of Plaintiff's contention that the Pollution Exclusion applies is based on the allegation that the "silt, sand, sediment and construction materials" resulted in clogged waterways and flooding. (Dkt. No. 21 at 23–24.) Plaintiff compares this activity to the facts in *E. Concrete Materials, Inc.*, where the court found rock fines to be contaminants when the rock fines "negatively impacted [a] fish habitat and changed the flow and contours of stream." (*Id.* at 24) (citing 948 F.3d at 301). The court held that the rock fines constituted contamination because they "'render[e]d [the creek] unfit for use' as a habitat for trout and other species." *Id.* The court did not solely base its holding on the fact that the rock fines diverted the flow and contours of the stream, but rather concluded that another factor must be present for a material to qualify as a contaminant. *Id.* In that case, the court held that the rock fines were a contaminant because their addition to the stream rendered it unfit as a fish habitat. *Id.* Here, the facts alleged are solely based on the argument that the "materials and substances" clogged waterways and caused flooding. (Dkt. No. 21 at 23–24.) Without further evidence that the "materials and substances" rendered the waterways unfit for a specific use, the Court cannot hold that the "materials and substances" qualify as contaminants under the rationale in *E. Concrete Materials, Inc.*

Similar to the Court's analysis regarding the plain meaning and application of "irritants," Plaintiff fails to cite any caselaw that would bind the Court to hold that the "materials and substances" in question are "contaminants." As such, and in line with the plain meaning, the Court

holds that the "materials and substances" in question in this case are not "contaminants" within the relevant insurance policy Pollution Exclusion.

### 3. Plaintiff Does Not Provide a Limiting Principle

The Court's holding that "materials and substances" are not pollutants is based on the plain meaning of the words "irritant" and "contaminant." The Court also emphasizes that Plaintiff did not include any limiting principle within its argument for applying the Pollution Exclusion. Such a limiting principle is required to prohibit the definition of a word from falling outside the intended scope of its meaning. *Cleere Drilling Co. v. Dominion Expl. & Prod., Inc.*, 351 F.3d 642, 652 (5th Cir. 2003). When the definitions of "irritant" and "contaminant" are "viewed in isolation, [they] are virtually boundless, for 'there is virtually no substance or chemical in existence that would not irritate or damage some person or property.'" *Id.* For example, neither pollution norPage 13 of 18 contamination is the cause of "bodily injuries suffered by one who slips and falls on the spilled contents of a bottle of Drano, [or] . . . bodily injury caused by an allergic reaction to chlorine in a public pool," despite the fact that both Drano and chlorine could probably be classified as contaminants in those situations." *Id.* The same argument applies in this case. If the Court were to hold that the "materials and substances" alleged, here, are either "irritants" or "contaminants," the definitions of those words would be so overbroad as to fall outside the intended scope of their meaning.

The Court has an interest in limiting the scope of the meaning of "irritants" and "contaminants" in order to ensure that neither takes on an overbroad application. Here, neither "materials and substances" nor "silt, sand, sediment and construction materials" qualify as "pollutants." Furthermore, Plaintiff does not provide any limiting principle that allows for the Court to protect against overbroad application of either word. (Dkt. No. 21; Dkt. No. 28.)

### C. Two Other Arguments by Plaintiff

Aside from Plaintiff's argument that "materials and substances" and "silt, sand, sediment and construction materials" fall within the classification of "irritants" and "contaminants," Plaintiff also makes two other arguments as to why the Pollution Exclusion should apply. First, Plaintiff argues that the application of the Pollution Exclusion is not limited to "traditional environmental pollution." (*Id.* at 22) (citing *Certain Underwriters at Lloyd's London v. C.A. Turner Const. Co.*, 112 F.3d 184, 188 (5th Cir. 1997)). In *Certain Underwriters at Lloyd's London*, a worker was injured when welding a pipe that broke and released phenol gas into a tent. *Id.* at 185. Although the court concluded that the definition of pollution is not limited to "traditional environmental pollution," the court based its holding on the language of the pollution exclusion in the contract as issue in that case, not on a broadly applicable principle. *Id.* at 188. The court used a dictionary to define pollution as "[c]ontamination of air . . . by the discharge of harmful substances." *Id.* (citing *Webster's II New Riverside University Dictionary* 911 (1984)). In accordance with the dictionary definition, the court held that phenol gas is a pollutant or contaminant that caused bodily injury since it was a toxic chemical that restricted the worker's breathing. *Id.*

To further support the notion that the Pollution Exclusion is not limited to "traditional environmental pollution," Plaintiff relies on *Clarendon Am. Ins. Co.*, where the court held that "dust, sand, gravel, concrete, and cement constituted pollutants." (Dkt. No. 21 at 16) (citing *Clarendon Am. Ins. Co.* 10 F. Supp. 2d at 742-44). In *Clarendon Am. Ins. Co.*, residents were allegedly injured "by contact with wet cement and by contact with the dust, sand, gravel, silica and other particulates produced by [d]efendants. *Id.* at 738. Additionally, the underlying suits alleged that the injured inhaled "the fumes emanating from cement and its additives and inhale[d] the dust, sand, gravel, silica and other particulates produced by the defendants [] which contain silica." *Id.*

However, the court held that these allegations fell within the pollution exclusion because "silica is within the ambit of 'pollution' as defined in this provision." *Id.* at 744. The facts and the court's rationale in *Clarendon Am. Ins. Co.* are not on point here because the present case does not involve bodily injury from a toxic chemical. *Id.*

Second, Plaintiff argues that the pollution exclusion is not limited to "discharges of toxic or inherently dangerous substances." (Dkt. No. 21 at 22) (citing *Nautilus Ins. Co.*, 566 F.3d at 455). Again, the case used to illustrate this rule is not analogous to the facts here. *See Nautilus Ins. Co.*, 566 F.3d at 456 (holding that the pollution exclusion applies to a release of carbon monoxide since it was clearly a fume that caused bodily injury within the exception). Here, "materials and substances" and "silt, sand, sediment and construction materials" are not fumes that caused bodily injury and thus the rule in *Nautilus* is not dispositive of whether the Pollution Exclusion applies.

Conversely, the use of the words "materials and substances" and "silt, sand, sediment and construction materials" are not gases or chemical vapors. Thus, the cases above are not on point and are not persuasive regarding the facts in the present case. For the foregoing reasons, the Court holds that Plaintiff's arguments in favor of holding that the relevant contract's Pollution Exclusion is applicable in the present case are unavailing.

### D. Duty to Defend

Because the Pollution Exclusion is inapplicable in this case, Plaintiff has a duty to defend Defendant in the Underlying Lawsuits. Although the Claimants in the Del Pino suit allege "silt, sand, sediment and construction materials produced" entered the waterways and caused flooding, flooding alone is not enough to render the waterways unfit under, *E. Concrete Materials, Inc.*, 948 F.3d at 301. Thus, the Claimants did not allege sufficient facts in the Del Pino suit to render "silt, sand, sediment and construction materials produced" pollutants.

On the contrary, the Claimants in the Ellisor suit and Nelson suit amended their petition alleging "materials and substances" entered the waterways to cause flooding. Plaintiff has not cited case law that supports the contention that "materials and substances" or words of similar vague classifications constitute pollutants. Rather, Plaintiff argues that the original petitions should be admitted under *Monroe*, which is not applicable here.

Since the claims in the Underlying Lawsuits do not fall squarely within the Pollution Exclusion, Plaintiff has a duty to defend the whole case. *Zurich Am. Ins. Co. v. Nokia, Inc.*, 268 S.W.3d 487, 491 (Tex. 2008) ("Where the complaint does not state facts sufficient to clearly bring the case within or without the coverage, the general rule is that the insurer is obligated to defend if there is, potentially, a case under the complaint within the coverage of the policy.") (citing *Heyden Newport Chem. Corp. v. S. Gen. Ins. Co.,* 387 S.W. 2d 22, 26 (Tex.1965)). The use of the language "materials and substances" is not specific enough to fall under the Pollution Exclusion and if the petitions "potentially include[] a covered claim, the insurer must defend the entire suit." *Id.* The duty to defend favors the insured and it is triggered since the petitions allege facts that may include a covered claim. Although Plaintiff has a duty to defend, the duty to indemnify is not immediately attached.

### E.  Duty to Indemnify

Although Plaintiff has a duty to defend, the duty to indemnify is not ripe at this stage of litigation. Under Texas law, "the duty to defend and the duty to indemnify are distinct and separate duties." *Northfield Ins. Co. v. Loving Home Care, Inc.*, 363 F.3d 523, 528-29 (5th Cir. 2004). "An insurer must defend its insured if a plaintiff's factual allegations potentially support a covered claim, while the facts actually established in the underlying suit determine whether the insurer must indemnify its insured." *Zurich Am. Ins. Co.,* 268 S.W.3d at 490 (citing *GuideOne*

*Elite Ins. Co. v. Fielder Rd. Baptist Church,* 197 S.W.3d 305, 310 (Tex. 2006)). Additionally, Texas law "only considers the duty-to-indemnify question justiciable after the underlying suit is concluded, unless 'the same reasons that negate the duty to defend likewise negate any possibility the insurer will ever have a duty to indemnify.'" *Northfield Ins. Co.*, 363 F.3d at 529 (citing *Farmers Tex. County Mut. Ins. Co. v. Griffin,* 955 S.W.2d 81, 84 (Tex.1997)).

Thus, the question of indemnity is not ripe and must be adjudicated after the duty to defend is determined since it requires a different standard.

### F. Texas Water Code Violation and Nuisance Claim

Defendant argues that in addition to the alleged "materials and substances" that entered the waterways, the violation of the Texas Water Code and nuisance claims also fall outside of the Pollution Exclusion. (Dkt. No. 25 at 17–20.) Since the Court agrees that the alleged "materials and substances" that entered the waterways fall outside of the Pollution Exclusion, the Texas Water Code violation and nuisance claims are not indicative of whether Plaintiff has a duty to defend. To emphasize, "if the underlying complaint pleads facts sufficient to create the potential of covered liability, the insurer has a duty to defend the entire case." *City of Coll. Station, Tex. v. Star Ins. Co.*, 735 F.3d 332, 336 (5th Cir. 2013). Thus, Plaintiff has a duty to defend the entire case regardless of whether the violation of the Texas Water Code and nuisance claims fall within the Pollution Exception.

## IV. CONCLUSION

Based on the foregoing, the Court **RECOMMENDS** Plaintiff's first Motion for Final Summary Judgment (Dkt. No. 21) be **DENIED.**

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant

to Federal Rule of Civil Procedure 72(b) and General Order 2002-13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk electronically. Copies of such objections shall be mailed to opposing parties and to the chambers of the Undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas on August 5, 2022.

Sam S. Sheldon
United States Magistrate Judge